I woke up this morning and I was sure that today is June 1, 2009. However, I googled the Persian calendar and it appears to be its year 1388. The truths of this matter based on the fact that the respondent lived 17 years of his life in Iran and he was educated in Persian numbers, in the Persian calendar, and during his hearing he constantly had problems with calculations and numbers. For example, when the judge asked him, what was your age when you immigrated from Iran, he claimed to be 27, even though the simple calculation shows that he was 17. And this problem with the numbers continued throughout the hearing and he was constantly confused with the numbers. However, he kept pointing to the fact that the Persian calendar is completely different than European or Gregorian calendar. The government of course argues that, we argued that only month system is different but not the years. But the court could ask, the court could take a judicial notice that in fact and indeed not only the months and the dates are different, the years are different as well. So in this case, judge absolutely ignored this credible and reasonable explanation by the respondent, by the petitioner that he cannot calculate and he needs time to sit and calculate as of the dates of the incidents. That was totally ignored by the immigration judge. That was also totally ignored by the Board of Immigration Appeals. However, that was the only reason that the Board of Immigration Appeals pointed to as a reason for adverse credibility findings. Now, they also made an alternative findings of course. They said, well there is no nexus. But reading this case, it's absolutely clear in my mind that negative credibility findings bled into the reasoning of the nexus. The agency claimed that, well even if we take it in the best light and even if we take it as credible, nevertheless there is no nexus. But one reasonable observer cannot hold that there is no nexus if taken all the facts on its face. The first issue is of course the negative credibility findings. If this court overturns negative credibility findings, then taking all the facts on its face as true, in the petitioner's mind, our argument is there is no doubt that there was a nexus. In fact, there was a nexus on two grounds. One was the fact that he was targeted for his mixed ethnicity and the second part that he was targeted for his political opinion even though he claimed he never … Well, that was pursued in a brief as an undergrader. Every time he complained, he got … Well, no, but that wasn't pursued and there is no finding on that. I mean, what you pursued was on account of ethnicity. Right, but we also argued that it also … You can argue it until the cows come home, but if it weren't pursued and there is no we can't just deal with it. So maybe you ought to just focus on the ethnicity point which was preserved and which you think … I think you have a valid argument. That is correct, Justice Kramer. The State Department report shows that there was violence and intimidation and a number of mixed ethnic families were driven from Armenia and that fact is not an issue. Okay, so what connects him to that ethnic turmoil? Well, he claims … By the government? By the government. Yes. He claims that his accent, the way he speaks … You know, some of that, I mean, his mustache and his accent, but that is just, again, sort of in the air. What can you point to in the record that connects his ethnicity to some action taken by the government? Well, the government agents, when they were beating him up, they were pointing to his specific ethnicity. If we take his testimony as true, that has to come in. And that's true. That occurred at his house and that occurred at the store. At his business. That is correct. I have a question about the Convention Against Torture claim which relied on … the adverse finding on that point relied on more than the adverse credibility. It relied on the documentary evidence about what was happening in Armenia and it also relied on the fact of his family remaining there without harm. Even if you are correct with respect to the other claims, why wouldn't we uphold the agency on the cat claim? Well, because if we look at the court … well, the board just did one liner on the cat saying he didn't carry his burden. If we look at the immigration judge's ruling on the cat, judge speculated when it said, it's in the record, page 143, that if someone is tortured, it seems, and I quote, to me that one would require medical treatment. Well, that is pure case. And as we know from the media at this point, that, you know, not necessarily one should require medical attention. But that's not the point. The point is, again, the negative credibility findings were clearly bled into the cat claim. They were clearly in the nexus. And I understand that at the point … Well, they're not the same, though. There's a very different burden of what you have to show for the cat claim. And the IJ on that same page says, if the respondent's family is fine in Armenia, they've had no problems, there's no proof in the documents that there are human rights violations on the scale of torture and so forth. So that's why I'm saying there are some other reasons there besides adverse credibility. And if those are sufficient independently on the burden of proof under the cat, why wouldn't we have a different result there, even assuming everything else you've said is correct? I don't see the judge analytically analyzing differently than adverse. The judge was supposed to do that, but the judge didn't. The judge decided that there was no past torture, and they said, therefore, there will be no future torture. The judge didn't go into the State Department and decided to actually record that shows there's mass violations and that torture is very common in that country. To the contrary, the judge simply based her finding there will be no future torture on the fact that the family is there. But the petitioner clearly testified that the family was hidden, the family was outside, and the family wasn't similarly situated. So, again, I believe in the torture, they didn't actually analyze it on the merits, but rather took the adverse credibility and kind of went into dismissing the claim, since it's negative, we'll just do it because law requires us to do it. The whole torture argument was based on that kind of concept. Okay. You want to say the rest? Yes. I would like to reserve two and a half minutes. Good morning, Your Honors. May it please the Court, Dietzle for on behalf of the Respondents. Is this the right case? Yes, ma'am. Yes, ma'am. I just wanted to be clear for the record that the petitioner based his claim on three incidents that tied into his Azeri ethnicity, not his Iranian ethnicity, which is important because there's no evidence in the record. Even what he said, they said when they came to his house and when they came to his store? Well, that, the store incident and his home incident, there's no evidence those were government actors that perpetrated those two events. It's necessary for the government to be involved in that. What about the border crossing? He spent three days in a trailer. He's beaten up. He's told he can't trade because he's not really Armenian. What's wrong with that? Well, that's factually, it's different. We do have government actors there, but even before we get into the merits of the claim, the adverse credibility determination is an umbrella that disposes of those claims. If we find, contrary to adverse credibility, the beating at the border is sufficient government action with nexus to his Azeri nationality? Well, the agency did not believe that he was of Azeri ethnicity. There's no evidence in the record that he is of Azeri ethnicity. But that's tied again to the credibility finding because he said he was. That's presuming, that's presuming that there is a credibility finding, which in this case Judge Bea asked you to assume for the sake of his question that the credibility finding is no good, or the adverse finding is no good. His testimony about his ethnicity, if he is believed, is sufficient evidence of his ethnicity, is it not? Presuming that, if the court does find that there is compelling evidence to reverse the adverse credibility determination and we proceed to the merits of the claim regarding the border crossing incident, we do have government actors. The Border Patrol is acting on behalf of the or as part of the Armenian government. And having said that, that's component one of our analysis. Component two is whether they acted on account of that Azeri ethnicity. The evidence of the record, substantial evidence, indicates that is not the case. Yes, I'm sorry, I was going to ask you, I'm still kind of processing what you said earlier about the other two incidents not involving the government. And again, if he's believed, with respect to the incident in the store, he said that only people from the government are allowed to carry weapons. The intruders carried weapons with which they beat me. Therefore, they must have been from the government. I'd say it's largely a conclusionary, devoid of any evidence. That presumes that everyone carried weapons. Well, but if he's believed, he testified to it, and his testimony is evidence. There were ones surveilling clothing. I'm sorry? The perpetrators in both of those incidences were wearing civilian clothing. But to go back to Judge Baye's point Well, so does the FBI wear civilian clothing? I mean, what does that show? That presumes, in this case, that presumes every person in Armenia that carries a weapon works for the government, like That's what he testified He said, and there's nothing to conflict, there's nothing to contradict that. He said only government officials can carry weapons like those. Well, and that brings me to my next point. If, in the two-part analysis, analyzing part one being the perpetrators, whether they were affiliated with the government or not, which would bring us to the second part of the analysis, the motivation behind the action. With regard to the border incident, there's substantial evidence in the record to indicate that they beat him because these border patrol agents were corrupt and they desired an escalated bribe. For example, he had crossed the border four times before without any incident, and he admits it. In this particular case, his inventory had spent six months in Iran. He was carrying $35,000 of inventory, and unlike his previous cases when he crossed the border driving his own vehicle and carrying a trailer of inventory to stock his store back in Armenia, he hired a driver because he was carrying more inventory. He precedes the driver by traveling by bus, and he's waiting at the border. Once the border patrol realizes that his inventory is a lot more valuable than in past times, they ask for an escalated bribe. He admits he disagreed. He argued he's been beaten. The evidence, substantial evidence, indicates that he was beaten not because of his ethnicity, because there's no evidence that they knew that he was Azeri. His passport indicated that he was an Iranian national, and his claim is not based on his Iranian nationality. It's based on his alleged Azeri ethnicity, and it also shows that he's a citizen of Armenia. He's carrying an Armenian passport. So they see this, along with the value of the inventory. They notice he's got a history and he admits he's paid bribes to the border patrol in the past. They recognize this. They see he's got an increased value of inventory. He's paid bribes in the past, will ask for an increased amount. He refuses. He gets into an argument in the third trailer, as he admitted, and it escalates and he's beaten. He's beaten on account of the corruption of the border patrol and his refusal to pay the bribe, which brings us to the two incidents in the store and at his home. There's substantial evidence in the record to indicate that these individuals went to his store and to his home in an effort to silence him from going to the police. There's, once again, no evidence in the record that they knew of his alleged Azeri ethnicity. He's... He says they mentioned it, if I recall correctly. I don't recall specifically in the record that they mentioned he was Azeri. I think he said they did. I... Your Honor, I don't remember. I just... There's nothing in his passport on the record on page 268. Well, his passport doesn't make much difference to the folks who come to his store or to the house. But, once again, there's... To my knowledge, there's no specific evidence in the record to suggest that the perpetrators that came to both his store and his home had any knowledge of his Azeri ethnicity. And the evidence indicates that these individuals were trying to silence him from going to the police because he had just come from there to the prosecutor's office filing a complaint regarding his border incident. Well, he had some discussion with the intruders to his store about his ethnicity because they said all Armenians in whatever this region is are fighting Turks. And he said, no, I'm not a Turk. I'm an Armenian and this and that and the other thing. So they apparently had some conversation about his ethnicity. But not specifically that he's Azeri. And I have to remind the Court that his claim is specifically tailored to his Azeri ethnicity. That's different than claiming I was... These perpetrators targeted me because I'm non-Armenian. It's not a global, all-encompassing claim. It's specifically tailored to his Azeri ethnicity. In that particular instance, Judge Graber, the perpetrators never said, never identified or targeted him for his Azeri ethnicity. They simply said that we're identifying you as a non-Armenian. That could very well include, as Petitioner said, that he spent, I believe, 17 years of his life in Iran. But that's not his claim in this particular circumstance. Also, he admitted, just to reiterate, that these three acts, which this case reviles around, occurred on account of the Border Patrol's corruption and desire for an escalated bribe. The store incidents occurred on account of the perpetrator's initiative to try to silence him from going to the police, since he already came from the prosecutor's office. Now if I may just return back to the agency's adverse credibility finding. It's important to note that the agency based its adverse credibility finding, which is a factual finding and it's conclusive purposes here, on the fact that he changed his story on 11 instances in the record. For example, he claimed that he was at the Armenian border on July 23rd. That's page 167, 168 of the record. That conflicts with his passport that says it was May 28th. That's page 354 of the record. All of these incidents, the three incidences that are at issue, occurred within 18 months of filing his asylum claim. He was also, he also admitted that there weren't any stamps on his passport on July 23rd. That's 196 of the record. Then he said he returned to Armenia on May 28th. That's also page 196 of the record. Then after continuing the hearing, he comes back and he changes his date again to May 23rd. That's page 246 of the record. He then alleged that his whole incident occurred on November 20th of 1999. That's page 185 of the record. Then he later, then he admits that he entered the U.S. in February of 1999. Your Honor, I see that I'm out of time. Does the panel have any more questions? I don't think so. May I briefly conclude? Just sum it up. Yes, ma'am. One summation. Based on the government's presentation, we ask that you deny the petition for review in this case. We could have guessed that. Thank you. Mr. Sarian. Thank you. It will be very brief. We are seeking for overturning the First Grade Bill, the findings. Let me ask you, where in the record is there any evidence that the border guards beat him not because he wasn't Armenian, but because he was Azerian? Okay. There is no specific point in the record that border guards said, you're Azerian, therefore we're beating you. However, he pointed to the fact that he was speaking with a Farsi accent, and that was actually zero. A Farsi accent is an Armenian accent. That is correct, Judge. Now, is there any evidence that he spoke with an Azerian accent? Well, I didn't see any, but like I said, well, the northern part of Iran, which borders with is populated with Azeris. I want to bring to page 302. This is the State Department's report that actually says that because of Nagorno-Karabakh conflict, thousands of Azeris were driven with violence, and when he was visited by those people in civilian clothes and with the guns, they specifically said, people are dying in the war in Nagorno-Karabakh, and you're a Turk, therefore you should go. So, they tied it down to Azeri conflict between Armenia and Azerbaijan, and that shows in the State Department report. In alternative, we're asking to remain under Sono Olarte, because when the consideration is not given to a reasonable explanation, a judge should explain why explanation by the petitioner is not sufficient. Judge never mentioned any explanation.  Neither did the board address his explanations. In other words, they never said, oh, wait a second, he talked about differences in calendars and his educational background. They never even once mentioned that. So, under Olarte, it has to go back in the alternative, of course, if the panel finds it's appropriate. Thank you. Thank you, counsel. Both of you, the matter just argued will be submitted.
judges: Rymer, Graber, Bea